AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2020 JAN 30  AM II: 44

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV.

| In the Matter of the Search of | )
| *(Briefly describe the property to be searched or identify the person by name and address)* | )
| | ) Case No. 3.20 mj 056
| 7 Electronic Devices in the Possession of Homeland Security | )
| | )

SHARON L. OVINGTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| 21 USC s. 846 | conspiracy to distribute and possess with intent to distribute controlled substances |

The application is based on these facts:

Attached Affidavit of Kathleen Boyce

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kathleen Boyce, SA of the HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-30-20

_____
*Judge's signature*

City and state:  Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF:

Samsung Galaxy Note cellular phone, IMEI: 35656909078304; Black and Red Apple iPhone; Motorola cellular phone marked Model XT1921-5, MEID(DEC): 256691539 605571641; Black and Silver Apple iPhone marked Model A1522, IMEI: 355876062183789, Black and Silver Apple iPhone; Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477D739A; and, Black Apple iPhone

Case No. _____

3.20 mj 056

## AFFIDAVIT IN SUPPORT OF AN

## APPLICATION UNDER RULE 41 FOR A

## WARRANT TO SEARCH AND SEIZE

I, Timothy J. Wallace, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I, Kathleen M. Boyce, a Special Agent of Homeland Security Investigations (HSI), United States Department of Homeland Security, am hereinafter referred to as Affiant. As such, Affiant sets forth the following in support of a search warrant for one (1) Samsung Galaxy Note cellular phone, IMEI: 35656909078304 (Subject Device 1); one (1) Black and Red Apple iPhone (Subject Device 2); one (1) Motorola cellular phone marked Model XT1921-5, MEID(DEC): 256691539605571641 (Subject Device 3); one (1) Black and Silver Apple iPhone marked Model A1522, IMEI: 355876062183789  (Subject Device 4); one (1) Black and Silver

Apple iPhone (Subject Device 5); one (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477D739A (Subject Device 6); and, one (1) Black Apple iPhone (Subject Device 7).

2.     Affiant is an employee of HSI assigned to the Cincinnati Resident Office. Affiant has been employed with HSI since August 2010.  Affiant attended and graduated from the basic agent training course in Brunswick, Georgia. Affiant was then assigned to the HSI Miami Office, where Affiant was assigned to the Miami International Airport (MIA) Passenger Conspiracy Response Group and specialized in drug trafficking and money laundering investigations. In March 2016, Affiant was reassigned to the HSI Buffalo Office, where Affiant was assigned to the Financial Group, specializing in money laundering, virtual currency, bank fraud, and bulk cash smuggling investigations. Affiant has received extensive training in the investigation of narcotics trafficking and financial crimes from HSI, as well as ongoing in-service training.

3.     Since October 2017, Affiant has been assigned to the HSI Border Enforcement Security Task Force (BEST) in Dayton, Ohio.

4.     As a Special Agent for HSI, Affiant is charged with the duty of enforcing among other Titles, the Controlled Substance Act, Title 21, United States Code, together with other assigned duties as imposed by federal law.

5.     By virtue of Affiant's employment with HSI, she performs and has performed various tasks which include, but are not limited to:

    a.  Functioning as a surveillance agent for the primary purpose of observing and movements of drug traffickers and those suspected of trafficking in drugs;

    b.  Functioning as a case agent which entails the supervision of specific aspects of drug investigations; and,

2

c. The tracing and tracking of monies and assets gained by drug traffickers from the illegal sale of drugs.

6. This Affidavit seeks the issuance of a search warrant. There is probable cause that Marco VILLA, a/k/a Marco Antonio Avila-Villa, Marco Avila-Villa, Marco Avilla-Villa, Marco Antonio Villa, "Diablo", and John William GROOM, violated Title 21 U.S.C. §§ 846 and 841 (b)(l)(A) (conspiracy to possess with intent to distribute 400 grams or more of fentanyl). All of the details of the investigation are not included in this Affidavit, rather only information necessary to establish probable cause to search Subject Devices 1 through 7. There is probable cause to believe that evidence of these violations are contained within the cellular telephones as further described and depicted in Attachment A. The information contained in this affidavit comes from my personal knowledge and facts relayed to me by other law enforcement officers.

## PROBABLE CAUSE

7. Together with agents and officers of the HSI Cincinnati Border Enforcement Security Task Force ("BEST"), Affiant is currently involved in the investigation related to the drug offenses believed to have been committed by Marco VILLA (VILLA) and John William GROOM (GROOM). Based upon the investigation to date, there is probable cause to believe that VILLA and GROOM violated Title 21 U.S.C. § 846 and 841 (b)(l)(A) (conspiracy to possess with intent to distribute 400 grams or more of fentanyl). Unless otherwise noted, when Affiant asserts that a statement was made, Affiant received the information from a law enforcement officer who provided the information to Affiant, either verbally or in a written report. The officer providing Affiant with the information may have received the information by way of personal knowledge or from another source.

8. On April 10, 2019, Affiant and members of the Miami Valley Bulk Smuggling

3

Task Force (MVBSTF), comprised of agents from federal, state and local police departments, received information from a reliable informant regarding drug activity occurring at 1825 Parrish Ave, Hamilton, OH 45011. The subject believed to be residing at that address was identified as "Diablo," a Hispanic male, and was suspected of being involved in trafficking large quantities of narcotics. That same informant indicated he/she was in contact with "Diablo" via phone calls and text messages. Agents considered the informant reliable and deemed this information credible, as the informant had previously provided information to the MVBSTF that led to arrests and the seizure of illegal controlled substances.

9.      On April 10, 2019, at the direction of the MVBSTF, the informant agreed to purchase fentanyl from "Diablo," and arranged to meet him at the Miami Valley Gaming Casino, located in Lebanon, OH.

10.      On April 10, 2019, the day of the planned drug meet, at approximately 6:45 PM, agents and officers initiated surveillance of 1825 Parrish Ave, Hamilton, OH 45011.

11.      At approximately 7:18 PM, officers observed a blue sedan (Target Vehicle 1) parked outside of 1825 Parrish Ave, Hamilton, OH 45011 (Target Residence). A short time later, officers observed a Hispanic male (later identified as VILLA) exit the residence, place an unknown object into the trunk of the vehicle and enter the passenger side of the vehicle.

12.      At approximately 7:23 PM, officers observed Target Vehicle 1 as it exited the area. Officers observed Target Vehicle 1 as it traveled East on OH State Route 129 (OH-129), continuing South onto Interstate 75 (I-75) to the Speedway Gas Station located at 7397 Tylersville Rd, West Chester, OH 45069.

13.      Officers observed Target Vehicle 1 briefly meet with an individual who exited a white sedan (Target Vehicle 2) parked at the gas station. Officers observed that individual re-

4

enter Target Vehicle 2 after appearing to briefly speak with the passenger in Target Vehicle 1.

14.     Contemporaneous to the events at the gas station, "Diablo" called the informant and advised that he ("Diablo") was now nine minutes from the meet location. Agents confirmed via Google Maps that the estimated travel time from the gas station to the Miami Valley Gaming Casino was approximately nine minutes.

15.     At approximately 7:43 PM, agents and officers observed Target Vehicle 1 and Target Vehicle 2 depart the Speedway Gas Station parking lot in tandem and depart the area traveling North on I-75.

16.     Agents relayed Target Vehicle 1's and Target Vehicle 2's direction of travel to an Ohio State Highway Patrol (OSP) Trooper who was in the area assisting with surveillance.

17.     At approximately 7:45 PM, the OSP Trooper pulled behind Target Vehicle 1, identified as a blue Honda sedan bearing OH Registration ESK5818, and conducted a traffic stop of the vehicle after observing a turn signal violation as the vehicle exited I-75 N at the Monroe / OH State Route 63 (OH-63) Exit.

18.     Upon approach, the Trooper identified the driver of the vehicle as John William GROOM, who presented an Ohio driver license, and the passenger as Marco VILLA, who only provided his name and date of birth.

19.     The Trooper indicated he smelled an odor of raw marijuana coming from the vehicle. As a result, the Trooper conducted a probable cause search of the vehicle, during which he located a box in the trunk of the vehicle containing a white powdery substance suspected to be fentanyl wrapped in plastic bags and clear plastic wrapping. The Miami Valley Regional Crime Laboratory later determined the white powdery substance was approximately 497.20 grams of a fentanyl and tramadol mixture.

5

20.     During that same encounter with VILLA and GROOM, the Trooper also located and seized Subject Device 1 and Subject Device 2 as evidence.

21.     In a post Miranda interview, GROOM stated he picked up VILLA at his house located in Hamilton, OH, and VILLA placed the box in the trunk of his vehicle after exiting the residence. GROOM stated he was to be paid $100 to drive VILLA to the Miami Valley Gaming Casino to drop the box off to someone, and Target Vehicle 2 was to travel to the casino behind their vehicle as protection.

22.     In a post Miranda interview, in reference to the fentanyl located in the vehicle, VILLA stated it was "all [him]".

23.     On April 10, 2019, the Honorable Judge Keith Speath, Butler County Common Pleas Court, signed a search warrant authorizing the search of the Target Residence.

24.     Agents and officers subsequently conducted a search of the Target Residence, during which four firearms were located and seized from the residence, along with other evidentiary items, to include Subject Devices 3 through 7.

25.     Your affiant believes Subject Devices 1 through 7 may contain evidence of communication between VILLA, GROOM, and additional co-conspirators and other evidence related to drug trafficking by these individuals. Your Affiant requests permission to search the electronic data stored in Subject Devices 1 through 7 to locate any other evidence of drug trafficking activity that may be inside.

26.     In Affiant's experience, cellular phones are often used by criminals to carry out their business. Criminals often use the phones to communicate (either by voice, text message, or internet-based communication accessed by the phone) with customers, suppliers, and associates about pending criminal activity. It is also common to find photographs of their criminal

associates stored on the phones, as well as photos of weapons, drugs, money, or assets associated with their illegal activity. Criminals will often store phone numbers for their associates in the cellular phone, and sometimes use alias or code names for those entries. Electronic evidence stored on the phone also can show who used a particular cellular phone, because criminals often use prepaid phones or fake subscriber names when obtaining the phone from the service provider. Criminals commonly have multiple phones at a given time, with certain phones used to communicate with particular individuals or for specific purposes. By searching the data stored on the phones, your affiant believes evidence of VILLA's and GROOM's criminal activity may be revealed.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

27. The property to be searched is one (1) Samsung Galaxy Note cellular phone, IMEI: 35656909078304 (Subject Device 1); one (1) Black and Red Apple iPhone (Subject Device 2); one (1) Motorola cellular phone marked Model XT1921-5, MEID(DEC): 256691539605571641 (Subject Device 3); one (1) Black and Silver Apple iPhone marked Model A1522, IMEI: 355876062183789 (Subject Device 4); one (1) Black and Silver Apple iPhone (Subject Device 5); one (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477D739A (Subject Device 6); and, one (1) Black Apple iPhone (Subject Device 7). Subject Devices 1 through 7 are currently located and held by HSI at the Montgomery County Sheriff's Office (MCSO) Property Room, located at 345 W. 2nd Street, Dayton, Ohio 45417 (and within the Southern District of Ohio). Subject Devices 1 through 7 are depicted and described in Attachment A.

28.     The applied-for warrant would authorize the forensic examination of Subject Devices 1 through 7 for the purpose of identifying electronically stored data particularly described in Attachment B.

29.     Subject Devices 1 through 7 are currently in the lawful possession of HSI and the MCSO.  Subject Device 1 and Subject Device 2 came into HSI's and MCSO's possession after the Devices were seized during the course of the aforementioned traffic stop, and Subject Devices 3 through 7 came into HSI's and MCSO's possession after the Devices were seized pursuant to the search warrant of VILLA's residence.

30.     Based on my training and experience, I know that Subject Devices 1 through 7 have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Devices first came into the possession of HSI and the MCSO.

## TECHNICAL TERMS

31.     Based upon my training and experience, I use the following technical terms to convey the following meanings:

   a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and

8

from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.

9

Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs

10

usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

11

32.     Based on my training, experience, and research, I know that Subject Devices 1 through 7 are cellular telephones, and that most modern cellular telephones have capabilities that allow them to serve as "a wireless telephone, digital camera, portable media player, GPS navigation device, and PDAs." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33.     Based on my knowledge, training, and experience, Affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

34.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on these Subject Devices because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

35. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques,

13

including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the Subject Devices to human inspection in order to determine whether it is evidence described by the warrant.

36.    *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

37.     For these reasons, your Affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of Subject Devices 1 through 7 described in Attachment A, to seek the items described in Attachment B, which are evidence of violation of Title 21 U.S.C. § 846 and 841 (b)(l)(A) (conspiracy to possess with intent to distribute 400 grams or more of fentanyl).

Respectfully submitted,

Kathleen M. Boyce, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on January, 2020

Honorable Sharon L. Ovington
United States Magistrate Judge

15

**ATTACHMENT A**

This warrant applies to the following devices:

1.  One (1) Samsung Galaxy Note cellular phone, IMEI: 35656909078304, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 1). Subject Device 1 is currently located in the custody of HSI at the Montgomery County Sheriff's Office Property Room, 345 W. 2nd Street, Dayton, Ohio 45417 (and within the Southern District of Ohio). It is depicted in the photographs below:

 

2. One (1) Black and Red Apple iPhone, together with all electronic devices, including
   Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 2).
   Subject Device 2 is currently located in the custody of HSI at the Montgomery
   County Sheriff's Office Property Room, 345 W. 2nd Street, Dayton, Ohio 45417 (and
   within the Southern District of Ohio).  It is depicted in the photographs below:



3. One (1) Motorola cellular phone marked Model XT1921-5, MEID(DEC): 256691539605571641, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 3). Subject Device 3 is currently located in the custody of HSI at the Montgomery County Sheriff's Office Property Room, 345 W. 2nd Street, Dayton, Ohio 45417 (and within the Southern District of Ohio). It is depicted in the photographs below:




4.  One (1) Black and Silver Apple iPhone marked Model A1522, IMEI: 355876062183789, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 4). Subject Device 4 is currently located in the custody of HSI at the Montgomery County Sheriff's Office Property Room, 345 W. 2nd Street, Dayton, Ohio 45417 (and within the Southern District of Ohio).  It is depicted in the photographs below:

 

5. One (1) Black and Silver Apple iPhone, together with all electronic devices, including

   Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 5).

   Subject Device 5 is currently located in the custody of HSI at the Montgomery

   County Sheriff's Office Property Room, 345 W. 2nd Street, Dayton, Ohio 45417 (and

   within the Southern District of Ohio). It is depicted in the photographs below:



6. One (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477D739A, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 6). Subject Device 6 is currently located in the custody of HSI at the Montgomery County Sheriff's Office Property Room, 345 W. 2nd Street, Dayton, Ohio 45417 (and within the Southern District of Ohio).  It is depicted in the photographs below:



7. One (1) Black Apple iPhone, together with all electronic devices, including
   Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 7).
   Subject Device 7 is currently located in the custody of HSI at the Montgomery
   County Sheriff's Office Property Room, 345 W. 2nd Street, Dayton, Ohio 45417 (and
   within the Southern District of Ohio).  It is depicted in the photographs below:



This warrant authorizes the forensic examination of Subject Device 1, Subject Device 2, Subject

Device 3, Subject Device 4, Subject Device 5, Subject Device 6, and Subject Device 7, for the

purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.     All records on the Subject Devices described in Attachment A that relate to violations of Title 21 U.S.C. § 846 and 841 (b)(l)(A), involving Marco AVILA VILLA and John William GROOM, including but not limited to:

     a.  Lists of contacts and related identifying information;

     b.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     c.  Any information related to transferring, transporting of currency to include banking information;

     d.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

     e.  Any information recording VILLA's and GROOM's schedule or travel, such as the use of hotel rooms or other lodging, rental cars, or airline information; all bank records, checks, credit card bills, account information, and other financial records.

     f.  Evidence of communication and association between VILLA's and GROOM's co-conspirators, including "WhatsApp" or other cell phone applications used to communicate, text messages, photographs, email, Facebook, or other social media, phone call logs, and stored phone numbers;

     g.  Evidence of user attribution showing who used or owned the Subject Devices at the time the items described in this warrant were created, edited, or deleted, such

as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

h.  Records evidencing the use of any Internet Protocol addresses to communicate with Facebook or any other website, including:

i.  Records of Internet Protocol addresses used;

j.  Records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.